# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| PREMIUM RETAIL SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 4:21-CV-227 RLW |
| | ) | |
| v. | ) | |
| | ) | |
| MANHATTAN CAPITAL, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (ECF No. 13). This matter is fully briefed and ready for disposition. For the reasons stated herein, the Court will deny the Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue.

## LEGAL STANDARD

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction by pleading facts sufficient to support a "reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state." *K-V Pharm. Co. v. J. Uriach & CIA, S.A,* 648 F.3d 588, 59-92 (8th Cir. 2011); *see also, Viasystems, Inc. v. EBM—Papst St. Georgen GmbH & Co., KG,* 646 F.3d 589, 592 (8th Cir. 2011); *Miller v. Nippon Carbon Co., Ltd.,* 528 F.3d 1087, 1090 (8th Cir. 2008); *Dever v. Hentzen Coatings,* 380 F.3d 1070, 1072 (8th Cir. 2004); *Epps v. Siewart Info. Servs. Corp.,* 327 F.3d 642, 647 (8th Cir. 2003). A plaintiff's prima facie showing "must be tested, not by the pleadings alone, but by affidavits and exhibits supporting or opposing the motion." *K-V Pharm.,* 648 F.3d at 592 (quoting *Dever,* 380 F.3d at 1072-73). The Court views the evidence in a light most favorable to the plaintiff and resolves

factual conflicts in the plaintiff's favor; however, plaintiff carries the burden of proof and that burden does not shift to defendants. *Epps,* 327 F.3d at 647; *Wallach v. Whetstone Partners, LLC*, No. 4:16 CV 450 CDP, 2016 WL 3997080, at *1 (E.D. Mo. July 26, 2016); *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014).  "When personal jurisdiction is contested, 'it is the plaintiff who must shoulder the burden of establishing that defendant's contacts with the forum state were sufficient.'" *Bryant v. Smith Interior Design Grp., Inc.*, 310 S.W.3d 227, 231 (Mo. 2010) (quoting *Angoff v. Marion A. Allen, Inc.,* 39 S.W.3d 483, 486 (Mo. banc 2001)).

## BACKGROUND

In April 2018, Defendants Manhattan Capital, LLC ("Manhattan Capital") and Jerry Katzoff ("Katzoff") (collectively, "Defendants") contacted Premium Retail Services, Inc. ("Premium"), a Missouri corporation, regarding providing merchandising and support services for developing coffee kiosks in certain Walmart stores. These negotiations involved sending several proposals to and from Premium's offices in Missouri.  The parties' agreement contemplated an initial 15-store pilot program limited to Tennessee and Colorado, but anticipated a 200-store nationwide launch.  The April 2018 agreement (hereinafter "First Agreement") provided: (1) Premium would provide full employee labor for each store; (2) Premium would provide 1 full-time manager in the field for every 7 stores during the pilot program and every 20 stores after the nationwide program launched; (3) Premium would manage all aspects of the labor and reporting; (4) Premium would ensure all kiosk associates were certified in food-handling; and (5) Premium would recruit, hire, and train all associates and ensure the kiosk was staffed.  Premium contends that services, such as the managing and reporting obligations, were performed in Missouri or in coordination with Premium's employees in Missouri.  The pilot program was schedule to begin on

July 1, 2018, and conclude on December 31, 2018.  On April 26, 2018, Katzoff signed the First Agreement on behalf of Manhattan Capital and sent it to Premium.  (ECF No. 21-1, Ex. 1)

Premium performed under the First Agreement, but was not paid.  Michael Shehadeh, Executive Vice President of Premium, sent letters, dated January 15, 2019, and January 30, 2019, as part of a good faith discussions to improve the success of the program.  (ECF No. 21-1, Ex. 2 and 3).  Effective January 30, 2019, Premium discontinued services for Manhattan Capital, with Premium still owed $132,442.68 under the First Agreement.  (ECF No. 21-1, Ex. 3).

In March 2019, Katzoff sent a text message to Brian Travers, CEO of Premium, which was received in Missouri.  Katzoff proposed to pay Manhattan Capital's obligation to Premium, $132,442.68, over the course of twelve (12) months.  On March 11, 2019, Travers sent Katzoff an e-mail, on behalf of Premium and from Missouri, rejecting the 12-month payment plan and proposing a counteroffer of a 4-month payment plan. (ECF No. 21-1, ¶ 21, Ex. 4).  On March 17, 2019, Katzoff sent Travers an e-mail:

> So here is my offer to settle as a counteroffer to your proposal below for full payment.  I will send you tomorrow the first of 16 weekly payments of $7,800 with the 17th payment being $7,642 for a total of $132,442 by July 12, 2019.  If that is acceptable respond back and I will send the first check tomorrow?  Jerry.

(ECF No. 21-1, ¶22, Ex. 4).  On the same day, Travers, from Missouri, responded to Katzoff via email: "I will accept your offer.  In order to maintain this cadence please send the check every Monday so that we receive it by week's end each week." (ECF No. 21-1, ¶ 23, Ex. 4).  Thereafter, Katzoff and/or Manhattan Capital sent checks to Premium's offices in Missouri in the amount of $7,800 for the first five (5) weeks based upon this agreement ("the Second Agreement").  (ECF No. 21-2, ¶ 24).  After making five payments, Defendants discontinued making payments and ceased communications.  (ECF No. 21-2, ¶ 25).  An outstanding balance of $93,442.00 under the Second Agreement remains.  (ECF No. 21-1, ¶ 26).

Premium then filed this lawsuit in the Circuit Court of St. Louis County, Missouri. Premium alleged two claims for breach of contract under the First Agreement and Second Agreement. (ECF No. 5). On February 23, 2021, Defendants removed this action to federal court based upon diversity jurisdiction, 28 U.S.C. § 1332. (ECF No. 1). On March 26, 2021, Defendants moved to dismiss this action based upon lack of personal jurisdiction and improper venue.

## DISCUSSION

### A. Personal Jurisdiction

Due process requires that a non-resident have minimum contacts with the forum state such that the maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice. *World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 291-92 (1980); *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945); *Guinness Import Co. v. Mark VII Distribs., Inc.,* 153 F.3d 607, 614 (8th Cir. 1998). Minimum contacts is based on the notion that "those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter." *J. McIntyre Mack, Ltd. v. Nicastro,* 131 S.Ct. 2780, 2787 (2011). A defendant's contacts with the forum state must be sufficient so that a non-resident defendant should reasonably anticipate being haled into court there. *World-Wide Volkswagen,* 444 U.S. at 297; *Stanton v. St. Jude Med., Inc.,* 340 F.3d 690, 694 (8th Cir. 2003); *Epps,* 327 F.3d at 648. Sufficient minimum contacts requires some act by which the defendant "purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *J. McIntyre,* 131 S.Ct. at 2787 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)); *see Romak USA, Inc. v. Rich,* 384 F.3d 979, 984 (8th Cir. 2004).

The "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as the result of random, fortuitous, or attenuated contacts or of the unilateral

activity of another party or a third person." *Stanton,* 340 F.3d at 693-94 (quoting *Burger King v. Rudzewicz,* 471 U.S. 462, 475 (1985)). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore,* 134 S.Ct. 1115, 1121 (2014). This means that "the relationship must arise out of contacts that the defendant himself creates with the forum State." *Id.* at 1122 (quoting *Burger King,* 471 U.S. at 475). Contacts between the plaintiff and the forum State do not satisfy this inquiry. *Id.* "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum state." *Stanton*, 340 F.3d at 694 (quoting *Burger King,* 471 U.S. at 475).

Courts apply a five-factor test to determine the sufficiency of a non-resident defendant's contacts with the forum state. *Dever,* 380 F.3d at 1073. The five factors are: 1) the nature and quality of contacts with the forum state; 2) the quantity of the contacts; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5) convenience of the parties. *Id.* at 1073-74 (quoting *Burlington Indus., Inc. v. Maples Indus., Inc.,* 97 F.3d 1100, 1102 (8th Cir. 1996)). The Court gives significant weight to the first three factors. *Id.* at 1074; *Fastpath, Inc. v. Arbela Techs. Corp.,* 760 F.3d 816, 821 (8th Cir. 2014). "Personal jurisdiction may be established by general jurisdiction or specific jurisdiction, and the third factor—relation of the cause of action to the contacts—distinguishes between the two." *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518–19 (8th Cir. 2010) (citing *Land–O–Nod Co. v. Bassett Furniture Indus.,* 708 F.2d 1338, 1340 (8th Cir. 1983))*.* "[G]eneral jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose," while specific jurisdiction requires that the cause of action

arise from or relate to a defendant's actions within the forum state. *Wells Dairy, Inc.*, 607 F.3d at 518–19 (quoting *Land–O–Nod Co.,* 708 F.2d at 1340).

### 1.  Specific Jurisdiction

"Specific personal jurisdiction can be exercised by a federal court in a diversity suit only if authorized by the forum state's long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment." *Viasystems, Inc.*, 646 F.3d at 593 (citing *Romak USA, Inc.,* 384 F.3d at 983); *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (citing *Berry v. Berry (In re Marriage of Berry),* 155 S.W.3d 838, 840 (Mo. Ct. App. 2005) (quoting *Wray v. Wray,* 73 S.W.3d 646, 649 (Mo. Ct. App. 2002)) ("In Missouri, to obtain personal jurisdiction over a non-resident defendant, 'the plaintiff must make a prima facie showing that (1) the cause of action arose out of an activity covered by Missouri's long-arm statute, ... and (2) the defendant had sufficient minimum contacts with Missouri to satisfy the requirements of due process.'").

### a.  Long-Arm Statute

In Missouri, specific personal jurisdiction is authorized only to the extent that "the [cause of] action arose out of an activity covered by [Missouri's] long-arm statute." *Conway v. Royalite Plastics, Ltd.,* 12 S.W.3d 314, 318 (Mo. banc 2000). Missouri's long-arm statute authorizes personal jurisdiction over defendants who, *inter alia,* transact business, make a contract, or commit a tort within the state. Mo. Rev. Stat. § 506.500.1. These individual categories are construed broadly, such that if a defendant commits one of the acts specified in the long-arm statute, the statute will be interpreted "to provide for jurisdiction, within the specific categories enumerated in the statute[ ], to the full extent permitted by the [D]ue [P]rocess [C]lause." *State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner,* 677 S.W.2d 325, 327 (Mo. banc 1984).

- 6 -

In this diversity case, the Court applies state law to predict how the highest court in Missouri would resolve the issues. *Nordyne, Inc. v. Int'l Controls & Measurements Corp.*, 262 F.3d 843, 846 (8th Cir. 2001) (citing *Salve Regina College v. Russell,* 499 U.S. 225, 231 (1991)). As this case involves claims for breach of contract, the Court must look to Missouri contract law to determine the "existence and validity" of the contract. *Jackson v. Higher Educ. Loan Auth. of Missouri*, 497 S.W.3d 283, 288 (Mo. Ct. App. 2016).

> Missouri law requires (1) an offer, (2) acceptance, and (3) consideration to form a valid and enforceable contract. *Id*. An offer is made when the offeree—the person receiving the offer—would "reasonably believe that an offer has been made." *Jackson*, 497 S.W.3d at 288 (internal quotation omitted). A valid offer does not require the use of any specific terms of art. *See id*. The use of typical contractual terms can be helpful to discern intent. *Id*. at 289. A valid offer will include the ability to accept through some affirmative words or action. *See id*. at 290. An acceptance is present when the offeree signifies assent to the terms of the offer in a "positive and unambiguous" manner. *Katz v. Anheuser-Busch, Inc.*, 347 S.W.3d 533, 545 (Mo. Ct. App. 2011) (quoting *Kunzie v. Jack-In-The-Box, Inc.*, 330 S.W.3d 476, 484 (Mo. Ct. App. 2010)). Together, offer and acceptance constitute mutual assent. *See Guidry v. Charter Commc'ns, Inc.*, 269 S.W.3d 520, 528 (Mo. Ct. App. 2008). Third, an agreement must have an exchange of consideration: a promise to do something or refrain from doing something, or the transfer of something of value to the other party. *Baker*, 450 S.W.3d at 774.

*Shockley v. PrimeLending*, 929 F.3d 1012, 1017-18 (8th Cir. 2019). "A contract which has been accepted in Missouri is deemed to have been made in Missouri for purposes of jurisdiction under the Missouri long-arm statute." *Peabody Holding Co. v. Costain Grp. PLC*, 808 F. Supp. 1425, 1433 (E.D. Mo. 1992) (citing *Commercial Design, Inc. v. Dean/Dale and Dean Architects,* 584 F. Supp. 890, 893 (E.D. Mo. 1984); *Shady Valley Park & Pool, Inc. v. Dimmic,* 576 S.W.2d 579, 580 (Mo. Ct. App. 1979)); *Strobehn v. Mason*, 397 S.W.3d 487, 498 (Mo. Ct. App. 2013) ("For purposes of the long-arm statute, a contract is made where acceptance occurs."); *Wilson Tool & Die, Inc. v. TBDN–Tenn. Co.,* 237 S.W.3d 611, 615 (Mo. Ct App. 2007) (citing *Johnson Heater Corp. v. Deppe,* 86 S.W.3d 114, 119 (Mo. Ct. App. 2002)).

The Court finds it to be clear that it has specific jurisdiction over Defendants under the Missouri Long-Arm statute.   Count II of the Petition is based upon Breach of Contract of the Second Agreement.   (ECF No. 5).[1]   Defendants argue that "Katzoff engaged in settlement negotiations in relation to the Settlement E-mails in Missouri—that happened from outside of Missouri."  (ECF No. 14 at 6).   Defendants claims that the Second Agreement did not have a sufficient connection with Missouri for purposes of establishing jurisdiction under the Missouri long-arm statute. To the contrary, under Missouri law, the Court finds that the Second Agreement was made in Missouri, for purposes of the Missouri long-arm statute, because Premium accepted the contract in Missouri. *See Peabody Holding Co.*, 808 F. Supp. at, 1433.   Moreover, the Second Agreement was largely performed in Missouri, where Premium cashed the checks that Defendants knowingly directed to Missouri.   Given that the Second Agreement was made in Missouri, the Court denies Defendants' Motion to Dismiss, finding the Court has personal jurisdiction over Defendants based upon the Missouri long-arm statute, Mo. Rev. Stat. § 506.500.1.

**b.  Due Process**

Even if personal jurisdiction over a defendant is authorized by the forum state's long-arm statute, jurisdiction can be asserted only if it comports with the strictures of the Due Process Clause. *World–Wide Volkswagen Corp.,* 444 U.S. at 291. Defendants contend that the "only connection Defendants have to Missouri is that they are alleged to have entered into an agreement with a Missouri party, which is not sufficient for this Court to establish personal jurisdiction over Defendants."  (ECF No. 14 at 6 (citation omitted)).  Defendants undervalue the extent and the legal of effect of their communications with Premium, particularly as to the Second Agreement.

---

[1] Although Premium argues that the Court also has jurisdiction based upon the First Agreement, the Court finds that the clearer argument relates to the Second Agreement and, thus, focuses the discussion there.

Defendants attempt to minimize their communications as "incidental contacts of communicating via email or telephone with and/or submitting payments to Plaintiff while Plaintiff was in Missouri[.]" (ECF No. 14 at 7).  However, Defendants' communications with Premium created a contract in Missouri whereby Defendants became obligated to send sixteen payments to Premium. *See Peabody Holding Co.*, 808 F. Supp. at 1433.   Defendants then proceeded to partially perform under the Second Agreement by sending five of those payments to Premium's offices in Missouri.

The Court holds that Defendants purposefully availed themselves of the privileges of doing business in Missouri, particularly under at the Second Agreement.   The Court holds that Defendants' communications with Premium in Missouri are not the "random, fortuitous and attenuated contacts that cannot justify the exercise of personal jurisdiction." *Viasystems, Inc.*, 646 F. 3d at 594 (citing *Burger King Corp.*, 471 U.S. at 475).  Rather, the Court holds that Defendants' contacts with Missouri were purposeful, deliberate, and targeted.   Defendants communicated to settle Defendants' debt with the Premium, formed a contract with Premium in Missouri, and mailed checks to Missouri pursuant to the Second Agreement. Defendants should have reasonably anticipated  "being haled into court" based upon these contacts and Defendants' failure to perform under the Second Agreement. *See Burger King Corp.,* 471 U.S. at 474–75 (quoting *World–Wide Volkswagen Corp.,* 444 U.S. at 297).  Defendants' contacts are sufficient under both Missouri law and the Due Process Clause for the Court to exercise specific personal jurisdiction over Defendants.  The Court denies Defendants' Motion to Dismiss for lack of personal jurisdiction.

## 2.  Venue

Finally, Defendants argue that the District Court for the Eastern District of Missouri is not an appropriate venue under 29 U.S.C. § 1391(b).  Defendants contend that venue in this District is

improper "[b]ecause no Defendant resides here and no part, substantial or otherwise, of the dispute arose here[.]"  (ECF No. 14 at 9).

For the reasons previously discussed, the Court holds that venue is proper in this District under 28 U.S.C. §1391(b).  The Court finds that a substantial part of the events giving rise to the claim occurred in this District.  Specifically, the Court finds that the Second Agreement was formed in this District and that partial performance occurred in this District when Premium received Defendants' five payments under the Second Agreement.  Therefore, the Court denies Defendants' Motion to Dismiss based upon improper venue.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (ECF No. 13) is **DENIED**.

Dated this 27th day of October, 2021.


*Ronnie L. White*
_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**